IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| SHAW INTEGRATED AND TURF SOLUTIONS, INC., and COLUMBIA INSURANCE COMPANY<br><br>*Plaintiffs*,<br><br>v.<br><br>TUFTCO CORPORATION<br><br>*Defendant*. | Case No. 1:25-cv-00371<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Shaw Integrated and Turf Solutions, Inc. and Columbia Insurance Company (collectively, "Plaintiffs") file this Complaint for Patent Infringement and Demand for Jury Trial against Defendant Tuftco Corporation ("Tuftco" or "Defendant"). Plaintiffs allege as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring claims under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for infringement of United States Patent Nos. 12,006,606 and 12,139,833 (collectively, the "Asserted Patents").

## THE PARTIES

2. Plaintiff Shaw Integrated and Turf Solutions, Inc. is a corporation organized and existing under the laws of the State of Georgia, with a principal place of business at 616 E Walnut Avenue, Dalton, GA, 30721.

3. Shaw Integrated and Turf Solutions, Inc. is a wholly owned subsidiary of Shaw Industries Group, Inc. (collectively, Shaw Integrated and Turf Solutions, Inc. and Shaw Industries Group, Inc. are referred to herein as "Shaw").

4. Shaw Integrated and Turf Solutions, Inc. offers for sale products by and/or through its brands, including without limitation Shaw Sports Turf and Shawgrass

5. Plaintiff Columbia Insurance Company ("Columbia") is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business at 1314 Douglas Street, Suite 1400, Omaha, NE 68102.

6. Defendant Tuftco Corporation is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 2318 S Holtzclaw Avenue, Chattanooga, TN 37408.

7. Upon information and belief, Tuftco manufactures, sells, offers to sell, uses products and/or causes products to be made, sold, offered for sale and/or used throughout the United States, including in this judicial district. Upon information and belief, Tuftco also introduces or has introduced, or causes to be introduced or has caused to be introduced, infringing products into the stream of commerce knowing that they will be sold and/or used in this judicial district and elsewhere in the United States.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

9. The Court has personal jurisdiction over Tuftco in this action because it has its principal place of business in the state of Tennessee.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) at least because Tuftco has committed acts of infringement and has a regular and established place of business in this District.

## THE ASSERTED PATENTS

11. On June 11, 2024, United States Patent No. 12,006,606 ("the '606 patent"), entitled "Patterned Tufted Articles, Surface Covering Comprising Same, and Systems and Methods of Making Same," was duly and legally issued by the United States Patent and Trademark Office. The '606 patent lists William Vaughan, Philipe Aldahir, Jeffrey Wright, James Jarrett, and Kyle Aylor as inventors, and it was assigned to Columbia, such that Columbia holds all rights to sue for past, present, and future infringement of the '606 patent. A copy of the '606 patent is attached hereto as Exhibit 1.

12. On November 12, 2024, United States Patent No. 12,139,833 ("the '833 patent"), entitled "Patterned Tufted Articles, Surface Covering Comprising Same, and Systems and Methods of Making and Using Same," was duly and legally issued by the United States Patent and Trademark Office. The '833 patent lists William Vaughan, Philipe Aldahir, Jeffrey Wright, James Jarrett, and Kyle Aylor as inventors, and it was assigned to Columbia, such that Columbia holds all rights to sue for past, present, and future infringement of the '833 patent. A copy of the '833 patent is attached hereto as Exhibit 2.

13. Shaw Integrated and Turf Solutions, Inc. is the exclusive licensee of the Asserted Patents.

## BACKGROUND

14. Beginning in 1967, Shaw recognized better methods of developing flooring and other surface solutions designed for indoor and outdoor environments. *See generally* Our Company, https://shawinc.com/Our-Company/History (last visited Dec. 12, 2025). Initially producing only interior carpeting, Shaw expanded its portfolio to include products such as hardwood, vinyl, tile, and synthetic turf contributing to approximately billions of dollars in annual sales and thousands of associates worldwide. *See id.* As a result of large investments in research

and development, superior manufacturing, and rigorous testing protocols, Shaw has established multiple patented innovations. Indeed, Shaw's efforts to continually innovate has led Shaw to become "a leading American-owned synthetic turf company with over 4,000 installations." *See* https://shawinc.com/Our-Brands/Turf (last visited Dec. 12, 2025).

15. An example of Shaw's innovations in synthetic turf is its award-winning GAME ON® technology that reflects inventions claimed in the Asserted Patents. Using the patented GAME ON® technology, Shaw introduced to the market synthetic turf in which design elements like logos, lines, numbers, and hash marks are tufted directly into a single, large continuous piece of turf—rather than, e.g., manufactured separately and inlaid, via cutting and gluing, into other pieces of turf—limiting the number of seams in an artificial turf field. This allows for greater flexibility in turf designs and increased consistency and uniformity in the field of play. Moreover, reducing the need for cutting and gluing typically decreases maintenance needs associated with such and speeds installation.

16. Shaw has received industry accolades in recognition of the innovative nature of the GAME ON® technology. In 2022, the Synthetic Turf Council ("STC") awarded the GAME ON® technology its STC Innovator Award, an award given to recognize an STC member company's outstanding industry leadership through cutting-edge developments of products or processes that advance the synthetic turf industry to a new level of excellence.

17. Tuftco has been well-aware of Shaw and the GAME ON® technology since long before introducing its below-described ColorTurf Machines. For example, Shaw retained Tuftco as a vendor to provide machinery and engineering services in conjunction with commercializing the GAME ON® technology. As part of this relationship, Shaw shared with Tuftco—under applicable agreements—detailed information concerning the GAME ON® technology.

## THE ACCUSED PRODUCTS

18. Tuftco makes, uses, sells, and/or offers to sell one or more machines advertised at Tuftco's website as "Color Turf . . . . Not just a 'logo machine' but rather a 'full field' solution . . . Tuftco's ColorTurf Machine is the latest technology for tufting patterned turf. High pile patterned turf is now achievable in one seamless technology" ("ColorTurf Machines"). *See* https://www.tuftco.com/tufting/artificial-grass-shag (last visited Dec. 12, 2025). According to Tuftco's website as of December 12, 2025, ColorTurf Machines can tuft up to ten colors and are capable of tufting patterned turf in two-, four-, or five-meter widths using multiple machine gauges, variable gauge technology to change the tuft densities, and varying yarn sizes. *See id.*

19. As used herein, "Accused Products" refers to tufted articles made using the ColorTurf Machine.

20. On information and belief, Tuftco has sold and/or offered for sale one or more ColorTurf Machines to one or more Tuftco customers—with which Shaw Integrated and Turf Solutions, Inc. competes in connection with artificial turf products—with the specific intent that Tuftco's customers use ColorTurf Machines to make, use, sell, and/or offer for sale Accused Products.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 12,006,606

21. Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1–20 above, as if fully set forth herein.

22. Tuftco has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 2 of the '606 patent, under 35 U.S.C. § 271(a) by, *inter alia*, making, using, offering for sale, or selling within the United States, and/or importing

into the United States the Accused Products. By way of example only, Tuftco has made and continues to make Accused Products using one or more ColorTurf Machines.

23. By way of example only, the Accused Products infringe and continue to infringe at least claim 2 of the '606 patent. Claim 2 of the '606 patent (including claim 1 from which it depends) recites:

> 1. A tufted article having a length along a first axis and width along a second axis that is perpendicular to the first axis, the first and second axes being perpendicular to a vertical axis, the tufted article comprising:
>
> a backing having a continuous structure; and
>
> a plurality of tufts extending through at least a portion of the backing, the plurality of tufts distributed among a plurality of patterned regions, wherein each patterned region comprises at least one tuft of the plurality of tufts, wherein the tufts of each patterned region differ from the tufts of at least one other patterned region of the tufted article in at least one of color, pile height, yarn type, or yarn density, and wherein at least one patterned region forms a discontinuity in a color pattern of the tufted article moving along the first axis,
>
> wherein the tufted article does not comprise a seam within or associated with the continuous structure of the backing; and
>
> wherein the length of the tufted article is [from 160 feet to 500 feet].[1]
>
> 2. The tufted article of claim 1, wherein the tufted article is an artificial turf panel.

24. A claim chart demonstrating how the Accused Products infringe exemplary claim 2 of the '606 patent is attached hereto as Exhibit 3.

25. Tuftco is not licensed or otherwise authorized to practice the claims of the '606 patent.

---

[1] On September 18, 2024, a Request for Certificate of Correction was filed with the U.S. Patent & Trademark Office ("USPTO"), to correct Claim 1 to recite "wherein the length of the tufted article is from 160 feet to 500 feet" instead of "wherein the length of the tufted article is greater than 160 feet," consistent with an amendment to the claim made prior to the patent's issuance. On July 1, 2025, the USPTO issued the requested Certificate of Correction accordingly.

26. On information and belief, and based on the parties' above-described interactions concerning the patented inventions, Tuftco has known about and/or at least been willfully blind to the '606 patent at least since its issuance on June 11, 2024. At a minimum, Tuftco has had knowledge of the '606 patent at least as of the filing and/or service of this Complaint.

27. Tuftco has also indirectly infringed, and continues to indirectly infringe, at least claim 2 of the '606 patent by actively inducing its infringement by third parties in violation 35 U.S.C. § 271(b).

28. Tuftco's customers directly infringe the '606 patent when they make, use, sell, or offer for sale Accused Products made with one or more ColorTurf Machines. End users of the Accused Products—for example, facilities which purchase Accused Products for installation and use on sports fields—also directly infringe the '606 patent by using the Accused Products.

29. Through its making, selling, and/or offering to sell the ColorTurf Machines, Tuftco knowingly induces these acts of infringement with the specific intent to encourage them by taking active steps to encourage and facilitate direct infringement by these third parties. These affirmative acts include Tuftco's creation and dissemination of promotional and marketing materials (including on its website as depicted in Exhibit 3) relating to the ColorTurf Machines with knowledge and the specific intent that its efforts will result in the direct infringement of the '606 patent by these third parties' use of the ColorTurf Machines and/or Accused Products. On information and belief, these affirmative acts also include Tuftco's creation and dissemination of supporting materials, instructions, manuals, and/or technical information relating to the ColorTurf Machines with knowledge and the specific intent that its efforts will result in the direct infringement of the '606 patent by these third parties' use of the ColorTurf Machines and/or

Accused Products. Tuftco is aware and/or willfully blind that these affirmative acts infringe and/or would induce infringement of the '606 patent.

30. As a result of Tuftco's past and present unlawful infringement of the '606 patent, Plaintiffs have suffered and will continue to suffer damages in an amount not yet determined, including without limitation Shaw Integrated and Turf Solutions, Inc.'s lost profits (including lost profits resulting from direct infringement by Tuftco's customers), but in no event less than a reasonable royalty.

31. Beginning no later than the filing of this Complaint, Tuftco has had actual knowledge of the '606 patent. Tuftco's continued infringement following the filing of this Complaint, despite its knowledge of the '606 patent and Plaintiffs' infringement allegations, is intentional and deliberate and willful.

32. On information and belief, Tuftco will continue to infringe the '606 patent unless enjoined by this Court. Tuftco's infringement of Plaintiffs' rights under the '606 patent will continue to damage Plaintiffs, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 12,139,833

33. Plaintiffs reallege and incorporate each of the allegations in Paragraphs 1–32 above, as if fully set forth herein.

34. Tuftco has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '833 patent, under 35 U.S.C. § 271(a) by, *inter alia*, making, using, offering for sale, or selling within the United States, and/or importing into the United States the Accused Products. By way of example only, Tuftco has made and continues to make Accused Products using one or more ColorTurf Machines.

35. By way of example only, the Accused Products infringe and continue to infringe at least claim 1 of the '833 patent. Claim 1 of the '833 patent recites:

> 1. A tufted article for defining a portion of a football field, the tufted article having a length along a first axis and width along a second axis that is perpendicular to the first axis, the first and second axes being perpendicular to a vertical axis, the tufted article comprising:
>
> a backing having a continuous structure; and
>
> a plurality of tufts extending through at least a portion of the backing, the plurality of tufts distributed among a plurality of patterned regions, wherein each patterned region comprises at least one tuft of the plurality of tufts, wherein the tufts of each patterned region differ from the tufts of at least one other patterned region of the tufted article in at least one of color, pile height, yarn type, or yarn density, and wherein at least one patterned region forms a discontinuity in a color pattern of the tufted article moving along the first axis,
>
> wherein the plurality of patterned regions comprise a first patterned region simulating un-marked grass and a second patterned region corresponding to a marking that allows for usage of the football field, wherein the tufted article does not comprise a seam between the first patterned region and the second patterned region.

36. A claim chart demonstrating how the Accused Products infringe exemplary claim 1 of the '833 patent is attached hereto as Exhibit 4.

37. Tuftco is not licensed or otherwise authorized to practice the claims of the '833 patent.

38. On information and belief, and based on the parties' interactions concerning the patented inventions, Tuftco has known about and/or at least been willfully blind to the '833 patent at least since its issuance on November 12, 2024. At a minimum, Tuftco has had knowledge of the '833 patent at least as of the filing and/or service of this Complaint.

39. Tuftco has also indirectly infringed, and continues to indirectly infringe, at least claim 1 of the '833 patent by actively inducing its infringement by third parties in violation 35 U.S.C. § 271(b).

40. Tuftco's customers directly infringe the '833 patent when they make, use, sell, or offer for sale Accused Products made with one or more ColorTurf Machines. End users of the Accused Products—for example, facilities which purchase Accused Products for installation and use on sports fields—also directly infringe the '833 patent by using the Accused Products.

41. Through its making, selling, and/or offering to sell the ColorTurf Machines, Tuftco knowingly induces these acts of infringement with the specific intent to encourage them by taking active steps to encourage and facilitate direct infringement by these third parties. These affirmative acts include Tuftco's creation and dissemination of promotional and marketing materials (including on its website as depicted in Exhibit 4) relating to the ColorTurf Machines with knowledge and the specific intent that its efforts will result in the direct infringement of the '833 patent by these third parties' use of the ColorTurf Machines and/or Accused Products. On information and belief, these affirmative acts also include Tuftco's creation and dissemination of supporting materials, instructions, manuals, and/or technical information relating to the ColorTurf Machines with knowledge and the specific intent that its efforts will result in the direct infringement of the '833 patent by these third parties' use of the ColorTurf Machines and/or Accused Products. Tuftco is aware and/or willfully blind that these affirmative acts infringe and/or would induce infringement of the '833 patent.

42. As a result of Tuftco's past and present unlawful infringement of the '833 patent, Plaintiffs have suffered and will continue to suffer damages in an amount not yet determined, including without limitation Shaw Integrated and Turf Solutions, Inc.'s lost profits (including lost

profits resulting from direct infringement by Tuftco's customers), but in no event less than a reasonable royalty.

43. Beginning no later than the filing of this Complaint, Tuftco has had actual knowledge of the '833 patent. Tuftco's continued infringement following the filing of this Complaint, despite its knowledge of the '833 patent and Plaintiffs' infringement allegations, is intentional and deliberate and willful.

44. On information and belief, Tuftco will continue to infringe the '833 patent unless enjoined by this Court. Tuftco's infringement of Plaintiffs' rights under the '833 patent will continue to damage Plaintiffs, causing irreparable harm for which there is no adequate remedy at law, unless enjoined by this Court.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Tuftco as follows:

A. That this Court adjudge and decree that Tuftco has infringed and continues to infringe '606 patent;

B. That this Court adjudge and decree that Tuftco has infringed and continues to infringe '833 patent;

C. That this Court adjudge and decree that Tuftco's infringement of the '606 patent has been willful;

D. That this Court adjudge and decree that Tuftco's infringement of the '833 patent has been willful;

E. That this Court enter an award for Plaintiffs of such damages as it shall prove at trial against Tuftco that are adequate to compensate Plaintiffs for the patent infringement that has occurred, said damages to be no less than a reasonable royalty together with prejudgment interests and costs, post-judgment interests and costs, and an accounting;

F. That this Court grant preliminary and permanent injunctive relief enjoining the aforesaid acts of infringement by Tuftco, their officers, agents, servants, employees, subsidiaries, affiliates, divisions, branches, predecessors, successors in business and attorneys, and those acting in concert with Tuftco, including related individuals and entities, customers, purchasers, representatives, original equipment manufacturers, dealers, and distributors;

G. That if a permanent injunction is not awarded, this Court additionally enter an award for Plaintiffs of an ongoing royalty for post-verdict infringement, payable on each product made, used, sold, offered for sale, and/or imported by Tuftco that is found to infringe one or more of the Asserted Patents, and on all future products that are not more than colorably different from those found to infringe;

H. That this Court enter an award for Plaintiffs of up to three times the amount of compensatory damages because of Tuftco's willful infringement, and any other enhanced damages provided by 35 U.S.C. § 284;

I. That this Court render a finding that this case is "exceptional" and award to Plaintiffs its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285; and

J. That this Court grant Plaintiffs such other relief, including other monetary and equitable relief, as may be just and proper.

Dated: December 12, 2025

Respectfully submitted,

**BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

*/s/ Cameron S. Hill*
Cameron S. Hill (TN BPR No. 017408)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
633 Chestnut Street, Suite 1900
Chattanooga, TN 37450-1801
(423) 209-4160 | (423) 752-9545 (fax)
chill@bakerdonelson.com

Thad C. Kodish (*pro hac vice* forthcoming)
GA Bar No. 427603
tkodish@fr.com
Christopher O. Green (*pro hac vice* forthcoming)
GA Bar No. 037617
cgreen@fr.com
Noah C. Graubart (*pro hac vice* forthcoming)
GA Bar No. 141862
graubart@fr.com
Ashley A. Bolt (*pro hac vice* forthcoming)
GA Bar No. 231197
bolt@fr.com
Joseph R. Dorris (*pro hac vice* forthcoming)
GA Bar No. 586708
dorris@fr.com
**FISH & RICHARDSON P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005

**COUNSEL FOR PLAINTIFFS
COLUMBIA INSURANCE CO. AND
SHAW INTEGRATED AND TURF SOLUTIONS, INC.**